PERRY v. FRIES et al.

(Supreme Court, Appellate Division, Third Department. January 6, 1904.)

1. MORTGAGES—DISCHARGE—MISTAKE—JUNIOR LIENORS—NOTICE OF SUPERIOR LIEN—EVIDENCE.

In an action to set aside a satisfaction of a mortgage for mistake as against an assignee of a junior incumbrance on the property, evidence reviewed, and *held* insufficient to show that such assignee had actual notice of the existence of the alleged senior lien at the time he took an assignment of the subsequent mortgage.

2. SAME—LIMITATIONS—RIGHT TO PLEAD.

Where plaintiff executed a satisfaction of a senior mortgage on certain premises, and procured the same to be recorded, she thereby contracted with all parties who had an interest in the premises described in the mortgage so satisfied that the same was paid, and that the premises were discharged from the lien thereof, and hence a subsequent assignee of a junior mortgage was entitled to plead the 10-years statute of limitations imposed by Code Civ. Proc. § 388, as a defense to an action by plaintiff to set aside such discharge for mistake, of which plaintiff alleged the assignee had notice, which he denied.

Appeal from Special Term.

Action by Hattie C. Perry against Amanda R. Fries and others. From a judgment in favor of plaintiff, defendants appeal. Reversed.

Jerome Rowe, on April 1, 1861, executed a mortgage, to secure the payment to J. A. Holmes of $800, upon two separate parcels of land, one of 27 acres and the other of 50 acres, which was duly recorded April 5, 1861, in the clerk's office of Tompkins county. On May 1, 1861, he executed another mortgage, to secure the payment to M. J. Hanmer of $833.33, upon such 50 acres, which was duly recorded May 27, 1861, in said clerk's office. The first mortgage, through several mesne assignments, was on April 1, 1887, assigned to this plaintiff. Such assignment was recorded January 4, 1888. On December 23, 1887, Caroline Rowe had become the owner of the 50-acre parcel, and Fanny P. Rowe had become the owner of the 27-acre parcel. William H. Van Dusen, the administrator of one Milo Van Dusen, was then, through several mesne conveyances, the owner of the mortgage on the 50-acre parcel, this plaintiff being still the owner of the first mortgage upon both the parcels. On such last-mentioned day, viz., December 23, 1887, the plaintiff executed and duly acknowledged a full discharge and satisfaction of her said mortgage, and on January 4, 1888, caused the same to be recorded as such in the said clerk's office. The several properties were so held until on June 27, 1894, the said administrator of Milo Van Dusen sold and assigned the said bond and mortgage on the 50 acres to George R. Williams, the defendant in this action. Subsequently, and in the year 1900, said Williams commenced an action to foreclose said mortgage, which resulted in a judgment of foreclosure and sale entered April 4, 1900, and on May 19, 1900, the premises were sold at public sale under such judgment to said Williams for the sum of $1,100, and on May 22, 1900, a conveyance was duly executed to him therefor. On May 18, 1900, this action was commenced by this plaintiff, claiming that her said mortgage had never been paid, and that the discharge of the same which had been recorded on January 4, 1888, was executed by her through a mis-

understanding, and in ignorance of its contents, and that she intended to release and supposed she was releasing from the lien of her said mortgage the 27 acres only. And she asks that such discharge be reformed so as to conform to the real purpose and intent for which she executed it, and that her said mortgage be foreclosed as against the said 50 acres, and as a lien thereon prior to the said mortgage so foreclosed by said Williams. The trial court rendered judgment granting her the relief so asked for, and from such judgment said Williams takes this appeal.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

S. Edwin Banks (Jared T. Newman, of counsel), for appellants.
Roswell R. Moss (Richard H. Thurston, of counsel), for respondent.

PARKER, P. J. Two grounds of error are urged by the appellant on this appeal, which, in my opinion, require a reversal of this judgment. The first is that the evidence does not satisfactorily show that the defendant Williams had notice that the mortgage which he purchased from Van Dusen was not the first lien upon the 50 acres therein described. Of course, it is conceded on the part of the respondent that, if Williams had the right to rely upon the record, and to assume that the facts were such as appeared therefrom, he would acquire the mortgage which he purchased as a lien prior to the mortgage of the plaintiff. Her mortgage appeared upon the record as having been fully paid and discharged as against all the lands described therein, and as a matter of fact it was so discharged. The discharge which was found there was in fact executed by her, and was a contract with all parties interested in the lands therein described that her mortgage had ceased to be a lien upon such premises. She claims, however, that although she did so discharge such 50 acres from the lien of her mortgage, she did not intend to discharge any more than the 27 acres therein described, and that her discharge as to the 50 acres was executed through a mistake of the scrivener. And while she does not claim that Williams was ever informed, before he purchased the Van Dusen mortgage, that there was any mistake in the execution of such discharge, yet she claims that he had notice of a fact which was sufficient to put him upon inquiry, and that if he in good faith had made such inquiry he would have ascertained the error through which a discharge was put on record. Such notice was to the following effect: When the discharge was recorded, Caroline Rowe had title to the 50 acres, subject to the two mortgages, and continued to hold such title down to her death, which occurred some time in 1902. In October, 1894, she applied to Williams to purchase this mortgage from Van Dusen, and at that time plaintiff claims that Fanny Rowe, her sister, and who was the widow of Jerome Rowe, and the person who had purchased the 27 acres in 1887 (when the discharge was executed and recorded), stated to Williams that "my sister holds the first mortgage upon her property, and it has never yet been paid." This statement is claimed to have been made in contradiction to a statement just made by Caroline that the Van Dusen mortgage which she was asking Williams to pur-

chase and carry for her was a first lien on the 50 acres. The claim rests entirely upon the testimony of Fanny Rowe, who clearly is not a disinterested witness, since she now claims to own more than a half interest in the plaintiff's mortgage. Williams squarely denies that any such statement was ever made to him. In the following June, after having caused a search to be made of the records in the clerk's office of Tompkins county, and discovering that the plaintiff's mortgage had been discharged, and that there was no lien on the 50 acres prior to the Van Dusen mortgage, and believing, as he testified, that such was the fact, he took an assignment thereof from Van Dusen, and paid the full amount due and unpaid thereon. Williams concedes that Caroline was introduced to him by Fanny Rowe, and has evidently forgotten when that occurred. It must be conceded that it was some time prior to October 19, 1893, and in this respect his letter to Van Dusen of that date corroborates Fanny Rowe. But it does not corroborate her statement that on October 4th she told him that her sister held the first mortgage on the 50 acres. As to that claim she is not corroborated by any evidence in the case. Williams admits that at some time Caroline and Fanny came to his office, and stated to him that a mistake had been made in discharging the mortgage which he had purchased. He claims that they differed among themselves as to the right of the transaction, but is positive that it was some time after he had purchased the mortgage, and that neither of them claimed that the mistake could affect his ownership. Although Williams seems to be uncertain as to when the conversation he alludes to was had, he is not at all uncertain as to the conversation itself. It was a conversation about the discharge, and a concession that as to him it was a valid one. Fanny Rowe does not pretend that when she introduced Caroline Rowe, in October before the purchase, she had any conversation whatever about the discharge. Evidently the conversation which Williams admits having in his mind is not the one to which Fanny testifies, nor does it in any sense corroborate her concerning the notice which she claims to have then given. It is correct, therefore, to say that the notice upon which the plaintiff relies rests entirely upon the uncorroborated evidence of Fanny Rowe. On the other hand, in the letter of October 19, 1903, which Williams wrote to Van Dusen concerning the request of Caroline Rowe that he purchase the mortgage, he says that he understands that it is a first claim on the place, which is difficult to understand if he had recently been notified that Fanny Rowe's sister held a mortgage ahead of it. Fanny Rowe's testimony as to this notice is not altogether convincing. If she so flatly contradicted Caroline Rowe in her statement that it was a first mortgage, it is hardly credible that both Caroline and Williams would have paid no attention to her statement, and allowed her to go away without an explanation. If she was correct, Caroline was making a false statement either dishonestly or ignorantly, and it is unlikely that Caroline would have allowed such a contradiction to stand without examination. Such a notice, if given, under such circumstances, would have caused an immediate inquiry on Caroline's part; and it is incredible that Williams would have complied with her request to carry the mort-

gage for her until she should have ascertained and explained to him what this claim on Fanny Rowe's part amounted to. In short, all parties acted exceedingly unnaturally if the notice to which Fanny Rowe testified was then given. On the other hand, Van Dusen testified that in the following June, when the mortgage was transferred and the money paid therefor, it was done in Williams' office in Ithaca, and that both Caroline and Fanny Rowe were present, and that they then both stated to Williams, in his presence, that the mortgage being transferred was a first claim on the land. Williams does not remember this, but Van Dusen is positive regarding it. He seems to be an entirely disinterested witness, and his evidence is entitled to great weight in the solution of this question. If his statement in this respect is true, it cannot be believed that Fanny Rowe had previously made the claim regarding her sister's mortgage which she testified to. And there does not seem to be any chance for mistake on Van Dusen's part. He either testified to a deliberate, and, so far as he was concerned, unnecessary, falsehood, or else he was telling the truth.

And, moreover, I cannot understand what influence would have induced Fanny to so antagonize Caroline Rowe in her effort to bring about the purchase of such mortgage by Williams. When Fanny Rowe purchased the first mortgage for the plaintiff, both she and the plaintiff knew that Caroline owned the 50 acres described in the Van Dusen mortgage, and therefore the discharge of the 27 acres in that first mortgage, as to her, undoubtedly operated to discharge it as a lien on the 50 acres. It is conceded that the 27 acres were ample to pay it. That both understood it to be so, I have no doubt; and therefore I think it very unlikely that Fanny Rowe ever attempted to interfere with Caroline's plan, or that Caroline would have permitted her to do so had she attempted it. It is a significant fact that no interest was ever demanded from Caroline Rowe, or from any one else, upon the plaintiff's mortgage after it was discharged of record. The conduct of all parties indicates that the plaintiff had no intent to in any way enforce her mortgage as against Caroline's interest in the 50 acres.

The burden was upon the plaintiff to establish that Williams had the notice upon which she relies, and she should meet that burden by clear and convincing evidence; and particularly should plaintiff have tendered such proof in this case after waiting so many years before notifying Williams of her mistake and asking the aid of equity to rectify it. She concedes that she discovered the mistake the year after Williams took the assignment from Van Dusen, and yet she made no effort to rectify it until May, 1900. Caroline Rowe, who would have been a controlling witness on this question, was then dead, and Williams had recovered a judgment of foreclosure and sale upon his mortgage against Caroline Rowe and all parties of record who had any interest in the 50 acres. After such laches on her part, during which the evidence of the most important witness to the transaction had become unavailable, and lands had been depreciated in value, and new interests therein acquired, it is especially necessary upon plaintiff's part to establish the notice upon which she relies by much more satisfactory and convincing proof than that which she has produced. The

clear weight of evidence is against her claim, and hence her equities do not prevail over those of the defendant Williams.

The further claim is made by the appellant that the plaintiff's right to this relief is barred by the statute of limitations. The plaintiff's cause of action being based entirely upon her own mistake, and there being no charge of fraud, section 388 of the Code of Civil Procedure, fixing the period of 10 years as the limitation, controls. Sprague v. Cochran, 70 Hun, 512, 24 N. Y. Supp. 369; Exkorn v. Exkorn, 1 App. Div. 124, 37 N. Y. Supp. 68. The action was brought some 14 years after the mistake was made, and hence, under such section, was clearly outlawed. But the plaintiff replies that such a defense is a "personal one," and that, therefore, Williams may not plead it. When the plaintiff executed the discharge and put it upon the record, she, in effect, contracted with all parties who had an interest in the premises described in her mortgage that it was paid, and that such premises were discharged from its lien. The instrument which, as she claims, she intended to execute, was a contract with Fanny Rowe merely; but the one which she did execute and deliver was with Caroline Rowe and Van Dusen, as well as with Fanny Rowe, and they were, in effect, parties to that instrument. It affected their rights in the 50 acres, and they, or those succeeding to their rights therein, were therefore necessary parties defendant to any action she might bring to reform such discharge and deprive them of its benefits. Surely, either one of them, or Williams, as the subsequent assignee of Van Dusen, might defend against such an action to reform by showing that Fanny Rowe had in fact paid up the plaintiff's mortgage. Such a payment would inure to their benefit, and relieve their interests in the 50 acres from its lien. Being necessary parties, therefore, to such an action, and their claim that it had been paid being a good defense thereto, I see no reason why they might not plead the statute in opposition to her claim that it was discharged through mistake, instead of through payment. Plaintiff bases her cause of action upon that claim, and defendant disputes it. He claims that he could prove actual payment, but that he is not obliged to do so in this action, for the reason that he may rely on her contract of discharge, and that under the provisions of section 388 she is barred from any equitable right to have that reformed. As to such defendants the statute is a personal defense. They do not plead it for the purpose of establishing payment of her mortgage by lapse of time. They do not claim that her debt is outlawed, but they do claim that her right to repudiate her contract that it has been paid and discharged is outlawed; and, as regards that question, I am of the opinion that they are personally interested in it, and have the right to plead it. Moreover, Williams has the further defense against the plaintiff's right to modify this discharge that, having relied upon it, she is estopped, as against him, from changing it. She replies that he had notice of the mistake. This he denies, and so an issue arises directly between them as to the very fact upon which she bases her right of action. It seems to me clear that the statute which bars her right to prove such fact and maintain this action after 10 years is a statute in which he is directly interested, and personal to him. For these reasons I am of the opinion that, whether or not Williams had the

notice upon which the plaintiff's right to reform this discharge is based, he may claim that the statute bars her right to compel him to litigate that question at this late day.

I do not examine the several other questions, both of law and of fact, which the appellant raises on this appeal. It becomes unnecessary to do so, inasmuch as, for the reasons above stated, this judgment cannot be sustained.

The judgment must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.