FLOYD POHLENZ ET AL., APPELLEES AND CROSS-APPELLANTS, V. MATTHOIAS PANKO, APPELLANT AND CROSS-APPELLEE.

FILED MAY 6, 1921. No. 21294.

1. Executors and Administrators: SALE OF LAND: VALIDITY: BOND. When an administrator is given license in the district court to sell land for the payment of debts, and the court orders him to give bond to account for the proceeds of the sale (under section 1453, Rev. St. 1913) after the sale is confirmed, from which no appeal is taken, and the property is in the hands of a good-faith purchaser, an objection that the sale bond was insufficient, because the penalty of the bond appears to have been left blank, will not invalidate the sale, where the bond may be reformed in equity and a remedy had thereon.

2. ———: ———: NOTICE: JURISDICTION. Where a notice of sale, given by the administrator, was published in a weekly paper for one day of each of the three weeks next preceding the sale, under section 1461, Rev. St. 1913, requiring publication "for three weeks successively next before such sale," even though the first publica-

tion was not made a full three weeks prior to the sale and is not, therefore, in strict compliance with the statute, the irregularity will not defeat the jurisdiction of the court.

3. ———: ———: COLLATERAL ATTACK. Such defective notice of sale, where no prejudice is shown to have resulted, will not be sufficient ground to set the sale aside on collateral attack by the heirs in an action brought within the five-year statute of limitations. Rev. St. 1913, secs. 1485, 1486.

4. ———: ———: BOND: JURISDICTION. The bond required by section 1453, Rev. St. 1913, to be given by an administrator before a sale is made, is not jurisdictional, since the matter of requiring such bond before sale is left to the judicial determination of the court, and is only to be given when the court concludes that the sale will bring more than sufficient to pay debts.

5. ———: ———: ALLOWANCE OF CLAIMS. Where claims are filed in an administration proceeding in the county court, the fact that the county court has failed to enter a formal order allowing claims is not fatal to a proceeding in the district court for license to sell lands to pay debts of the estate.

6. ———: SALE OF HOMESTEAD: VALIDITY. When the district court in such a proceeding grants a license to sell property which is a homestead, the sale will not be declared void after a confirmation, from which there has been no appeal, when it appears that the property was of greater value than $2,000, if the record shows no claim of homestead, or objection of any kind on that ground, was made in the proceeding, though the court may have committed error in not segregating the homestead and in not ordering $2,000 preserved to the owners, in lieu of the homestead.

APPEAL from the district court for Johnson county: JOHN B. RAPER, JUDGE. *Reversed and dismissed.*

*Sorensen & Bollen,* for appellant.

*Hazlett, Jack & Laughlin, contra.*

FLANSBURG, J.

Action brought by the heirs of George Pohlenz to quiet title in them to certain land as against the defendant, whose title depends upon an administrator's deed.

In 1895, George Pohlenz died. The administrator of his estate in 1896 applied to the district court for, and was given, a license to sell the land in question for the purpose of paying the debts of the estate. In pursuance

of that license, the property was sold for the amount of
$2,250 on August 15, 1896, and it is through that con-
veyance that the defendant claims title. The lower court
held against the plaintiffs on all objections made against
the validity of the administrator's sale, except one—that
it was the sale of a homestead—and on that proposition
the court found that, in its opinion, the land could, at the
time of sale, have been divided and the homestead interest
set apart, and that the remainder only of the land in ex-
cess of that interest should have been sold. On that
ground the court held the deed void as to that portion of
the land which the court found might have been set apart
in 1896 as a homestead, but held that the sale was valid as
to the remainder of the land, and made an apportionment
of the land between the plaintiffs and the defendant ac-
cordingly.

Two of the heirs, plaintiffs here, became of age within
five years prior to the commencement of this suit, and the
special five-year statute of limitations (Rev. St. 1913,
secs. 1485, 1486) does not, as to them, apply.

By section 1487, Rev. St. 1913, it is provided that ad-
ministrator's sales shall not be set aside for irregularities
in the proceedings, where it appears that (1) the adminis-
trator was licensed by a district court having jurisdiction;
(2) that he gave bond, approved by the judge, in case
bond was required; (3) that he took oath; (4) that he
gave statutory notice of the time and place of sale; (5)
that sale was made according to notice and confirmed,
and that the property is held by a good-faith purchaser.

It is insisted by the plaintiffs that the notice of sale and
the bond to account for the proceeds of the sale were not
strictly in accordance with the statute, and that, at least
as to the two plaintiffs against whom the five-year statute
of limitations has not run, the sale should, for those
reasons, be held void.

The statute (Rev. St. 1913, sec. 1487), however, does
not direct that a sale shall be set aside whenever it shall
appear that any one of the five conditions enumerated has

not been complied with. It provides only that, whenever it does affirmatively appear that those conditions have been met, then no irregularity in the proceeding shall be sufficient to invalidate the sale.

Though the statute is open to the inference that a sale may be set aside for irregularities, in a case where it appears that any of the five conditions of the statute have not been met, the statute is not mandatory that a sale shall be set aside for such technical omission alone, and, where the particular defect or omission is one of those which are not jurisdictional, it seems to us a sale should not be set aside unless the defect in or omission to comply with one of the five conditions affects injuriously the substantial rights of the parties interested.

The notice of sale which the plaintiffs attack, in this case, was given under section 1461, Rev. St. 1913, which requires that "notice of the time and place (of sale) * * * shall be published in a newspaper, * * * for three weeks successively next before such sale." One publication was made in a weekly paper on July 30, 1896, one, a week following, and one, a week following that. Sale was had according to the notice one day after the last publication, August 15, 1896. Three weeks, therefore, did not expire between the first publication and the date of sale.

Under our decisions, a statute providing that publication be made "for" three weeks is interpreted to mean that the notice shall consume a full three weeks' period of time before it is complete, and, though publication on one day, respectively, of each of the three weeks in a regular issue of a weekly paper is sufficient publication, still, it is held, three weeks must elapse after the first publication before the notice will be deemed to be complete. *State v. Cherry County*, 58 Neb. 734; *State v. Weston*, 67 Neb. 385.

On the other hand, where a statute requires publication in a newspaper "three weeks" and the word "for" is omitted, it is held that a regular publication in a weekly paper on one day of each of the three weeks is sufficient,

and that notice is complete upon distribution of the last paper, though three full weeks have not elapsed since the first publication. *Alexander v. Alexander*, 26 Neb. 68; *Davis v. Huston*, 15 Neb. 28; *Claypool v. Robb*, 90 Neb. 193; *In re Estate of Johnson*, 99 Neb. 275; *State v. Hanson*, 80 Neb. 724.

The distinction is strictly technical, but, applying the rule established, the publication of notice in this case is not in strict accord with the provisions of the statute.

Unless the notice of sale is jurisdictional, we are unable to see how any prejudice could have resulted by a failure to postpone the sale for a week after the last publication. By a postponement of the sale for one week, no further notice would have been given, no additional issues of the newspaper would have been distributed, and in no manner does it appear that the sale would have been affected in any particular. Such an irregularity would, in collateral attack, not be sufficient to invalidate the sale. *Matheson's Heirs v. Hearin*, 29 Ala. 210; *Saltonstall v. Riley*, 28 Ala. 164; *Moffitt v. Moffitt*, 69 Ill. 641; *Bland v. Muncaster*, 24 Miss. 62; *Haight v. Hayes*, 3 Neb. (Unof.) 587; 18 Cyc. 808.

With regard to judicial sales generally, it is stated in 24 Cyc. 21: "The fact that proper notice of a judicial sale has not been given is always a sufficient ground for refusing to confirm or setting aside the sale; but according to the weight of authority it is a mere irregularity which renders the sale voidable only and not void." See, also, *Bresee v. Preston*, 91 Neb. 174.

It seems clear to us that the notice is not jurisdictional. The court acquired jurisdiction by the administrator's application to sell and the giving of the statutory notice thereon to the parties interested. The administrator was licensed and took oath. Where a notice of sale is given and the sale is fairly conducted, so that no prejudice results, a mere technical failure to strictly follow the letter of the law does not defeat the jurisdiction of the court. A failure to give the strict statutory notice

should be objected to on confirmation, and the objection protected by appeal.

In the case of *Moffitt v. Moffitt, supra,* in which it was held that a failure to give a statutory notice did not invalidate the sale, the court said (p. 649) : "Whilst all are aware that the law should not be loosely administered in transferring title by sales of this character, still there must be a reasonable protection extended to the purchaser. If the statute is so construed that every slight deviation from its requirements shall defeat the title derived from the sale, then no one will ever pay a fair price for lands thus sold. That would be to sacrifice the lands of infants, and leave none to compete at such sales, as none but sharpers and speculators would run the risk of a title thus derived. * * * To hold that every departure from the statute should vitiate the sale, would be, we have no doubt, vastly more destructive of the interests of minors than all the abuses likely to occur under the construction the court has adopted."

It is the contention of the plaintiffs that the sale was void, for the reason that the administrator did not give a proper and sufficient bond before the sale was made, as is required by section 1453, Rev. St. 1913. This section of the statute provides that, when more land is sold "than is necessary for the payment of debts," the administrator shall before sale give a bond to the judge of the district court, guaranteeing that he will account for the proceeds of the sale. In the proceeding for license to sell, the court ordered the administrator to give a sale bond in the amount of $3,000. A bond with sureties was filed, in response to the order of the court, in the usual form and complete in all respects, except that the amount in the penalty clause of the bond was left blank. This the plaintiffs claim was no bond at all, was entirely void, and the same as if no bond had been given. Plaintiffs contend that the administrator did, therefore, not give a bond, approved by the court, and that such a bond had been, by the court, required.

Though the bond filed is, on its face, defective, it does not follow that it is not a bond. It was approved in its defective form and served the purpose of a bond in the case. The fact that the amount of the penalty was not inserted does not make it utterly void. It was drawn up and signed as an obligation, in response to an order that a $3,000 bond be given, and, though incomplete, that does not necessarily prevent a remedy on it. In some cases, where the penalty of a bond has been omitted, as it was here, some of the courts have held that, even in an action at law, parol testimony could be resorted to in order to show what the full agreement was, and, the full agreement being so proved, recovery would be allowed in that same action. *McManus v. Harrigan,* 85 N. Y. Supp. 220; *Dodge v. St. John,* 96 N. Y. 260; *Tischler v. Fishman,* 68 N. Y. Supp. 787; *Treasurer of State Lunatic Asylum v. Douglas,* 77 Mo. 647; *Burnett v. Wright,* 135 N. Y. 543.

It is unnecessary for us, in this case, to decide whether or not the remedy on such a bond may be available in an action at law, or whether it would be necessary to bring a suit in equity for a reformation of the instrument. In either event, it is quite apparent that the mere omission of the penalty from the bond, with no other evidence to show that the defect cannot be supplied, is not such an irregularity that it can be said that no bond has been given.

When the facts warrant it—and that such facts do exist in this case is not denied—the right in equity to perform, and to allow a recovery on the bond as reformed, is clear. *State v. Administrator of Frank,* 51 Mo. 98; *Nourse v. Weitz,* 120 Ia. 708; *Neininger v. State,* 50 Ohio St. 394; *Russell v. Russell,* 156 Ia. 674; 34 Cyc. 927.

Furthermore, the question of whether or not the land to be sold will bring more than is necessary to pay the debts is a question, in each instance, for judicial determination, and must be determined before the sale is made. The statute is not mandatory that a bond shall be

given in every instance, as in the case of guardian's sales (Rev. St. 1913, sec. 1690), and the case of *Bachelor v. Korb,* 58 Neb. 122, is not controlling nor applicable here. In the case of sales by administrators, though the court may err in judgment in its determination as to whether the land to be sold will bring more money than sufficient to pay debts, and may err on the question, therefore, of the necessity of giving sale bond, and may erroneously fail to require a bond, such error of judgment does not, of course, go to the jurisdiction of the court. Since the statute leaves the matter of giving bond, at least when the question of its necessity is uncertain, to the judicial determination of the court, it cannot be said that the giving of the bond in any case is, by statute, jurisdictional, for the same requirements of the statute cannot be said to be jurisdictional in one case and not jurisdictional in the other. In the case of *McClay v. Foxworthy,* 18 Neb. 295, though the court held, in an appeal on objections to confirmation, that the failure to give a bond in that case was erroneous, it did not hold that such failure was jurisdictional. Under similar statutes in other states, the failure to give such a bond, though the failure may have been erroneous, has been held not to be a jurisdictional defect. *Frothingham v. Petty,* 197 Ill. 418; *Perkins v. Fairfield,* 11 Mass. 227; *Wyman v. Campbell,* 6 Port. (Ala.) 219, 31 Am. Dec. 677; *Norman v. Olney,* 64 Mich. 553; 18 Cyc. 759.

It is our opinion, therefore, that plaintiffs have not shown that the defect in the bond has, in this instance, invalidated the sale.

Again, it is insisted that no formal order allowing claims was ever entered in the county court in the administration proceeding. The administrator's report shows that $2,987.99 was paid out on claims and costs of administration. The county judge testified that it was customary to make an entry on the claim docket that claims were allowed, but that in this instance there was no room to make such an entry, as the entry of claims

covered the entire space on the docket.   That this failure to make a formal entry allowing claims is not fatal to the proceeding in the district court for a license to sell has been decided in this as well as other jurisdictions.   *Haight v. Hayes,* 3 Neb. (Unof.) 587; *Stow v. Kimball,* 28 Ill. 93.

The more serious question in this case is whether the sale must be held void by reason of the fact that the property was a homestead.   Testimony was introduced to show the value and condition of the premises at the time of the death of the decedent in 1895, and the trial court, in this case, on that showing made a finding that the property could, in 1896, at the time of sale, have been divided and the homestead segregated without great diminution in value, but that no such division or admeasurement of the property was made.   The trial court, therefore, now orders that such portion of the property, as should then have been set aside as a homestead, be now set aside, and decrees that the administrator's deed is void as to so much of the property as represents the homestead interest, but valid as to the remainder.

The statutes governing execution sales of homesteads (Rev. St. 1913, secs. 3080-3088) provide that the debtor, where his property is levied upon, may notify the sheriff of his homestead claim, and, upon the giving of such notice, the creditor must thereupon proceed to have appraisers appointed and the homestead interest admeasured and, if separable, set apart for the debtor.   If the property is not capable of division, it may, in its entirety, then be sold; but from the proceeds of the sale an amount, in lieu of the homestead interest, must be preserved to the debtor.

These provisions of the statute plainly contemplate that the debtor shall make definite claim of exemption, and his failure, when opportunity is afforded, to give such notice prescribed by statute, even though it may not constitute a waiver of the homestead right—a doubtful question, under our decisions (*Rector v. Rotton,* 3 Neb. 171; *Van Doren v. Wiedeman,* 68 Neb. 243; 21 Cyc. 624)—would, at least where the property is of more value than $2,000, relieve

the creditor from requiring an appraisal and admeasurement of the homestead interest as a condition precedent to the sale.

When the debtor, on the other hand, gives the statutory notice of his claim, an appraisal and admeasurement of the homestead interest, when such interest is of greater value than $2,000, is a prerequisite to a valid sale. *Chamberlain Banking House v. Zutavern,* 59 Neb. 623; *Quigley v McEvony,* 41 Neb. 73; *France v. Hohnbaum,* 73 Neb. 70.

These statutes, then, if applicable to administrator's sales, have not been followed by those holding a homestead interest in the land, and the requirements for appraisal and admeasurement of the homestead have not been invoked. All persons interested in the land were, necessarily, made parties and notified of the proceeding in the district court for the license to sell. In that proceeding, the homestead interests must necessarily be determined, and any of such parties interested in the property were at that time afforded a hearing, to the end of determining those questions.

In the case of *Wardell v. Wardell,* 71 Neb. 774, it is held that the district court has jurisdiction to sell the homestead when it is of greater value than $2,000, though the statutory provisions, above mentioned, having to do with execution sales, have not been complied with. In such a case, the questions to be determined by the court are whether the homestead property is of more value than $2,000, and whether it may be segregated from the remainder of the property without material injury. That the property in this case was of greater value than $2,000 is not questioned, since at the sale it brought $2,250. The question of whether the property was divisible without material injury was a matter for judicial determination. It is presumed that the court exercised its best judgment on that question. The evidence upon which the court acted, if any, is entirely outside the record, which comes to us. It may have been that the court made a grievous error in its decision, but such an error does not go to the

jurisdiction of the court to act.   The court had power to sell the property, and, where the record is silent, presumptions favor the validity of the sale.   We do not believe such a sale is, on that ground, subject to collateral attack.   *Reinhardt v. Seaman,* 208 Ill. 448; *Bradley v. Drone,* 187 Ill. 175; *Sigmond v. Bebber,* 104 Ia. 431; *Doran v. Kennedy,* 122 Minn. 1, affirmed in 237 U. S. 362; *Watkins Land Mortgage Co. v. Mullen,* 62 Kan. 1.   In the latter case the court said:  "Generally speaking, when a court is invested with power, upon evidence, to determine a state of facts and declare the law applicable thereto, its decision, no matter how erroneous, is conclusive."

With regard to the court's disposition of the proceeds of the sale, that was a matter which the purchaser would not be bound to follow.   The sale having been confirmed and no appeal taken, those who had held homestead interests in the land were relegated in their rights to their proper shares in the proceeds of the sale which they were, under the law, entitled to hold in lieu of homestead.

It is our opinion that the objections made are not sufficient to show that the sale is void, and, therefore, that the plaintiffs in this action have at this time no interest in the land.   Their action to quiet title as against the defendant is, therefore, dismissed.

REVERSED AND DISMISSED.